# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| RONNIE NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-0715 (BAH) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The Plaintiff Ronnie Nelson, proceeding *pro se*, sues the District of Columbia and the District of Columbia Jail under 42 U.S.C. § 1983 for alleged violations of the First, Fifth, and Eighth Amendments to the Constitution.[1] Second Amended Complaint ("Am. Compl."), ECF No. 17. The Plaintiff also asserts a common law claim of negligence. *See id*. ¶ 18. The complaint arises out of the Plaintiff's detention at the D.C. Jail from November 3, 2011, to November 15, 2011.

The District of Columbia moves to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that (1) the Plaintiff failed to comply with the claim notice requirements of D.C. Code § 12-309, with regard to the negligence claim,[2] and (2) the complaint fails to state constitutional claims and a claim for which the District may be

---

[1]   The complaint against the District of Columbia Jail is dismissed because the D.C. Jail is a component of the District of Columbia government and not itself subject to suit. *See Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000); *Hinton v. Metro. Police Dep't, Fifth Dist.*, 726 F. Supp. 875, 875 (D.D.C. 1989).

[2]   *See Gabriel v. CCA*, 211 F. Supp. 2d 132, 139 (D.D.C. 2002) ("Notice of claim statutes are not applicable to § 1983 claims.") (citing *Felder v. Casey*, 487 U.S. 131, 140-41 (1988)).

held liable under § 1983.  Def.'s Mot. to Dismiss Am. Compl., ECF No. 18.  Upon consideration of

the Second Amended Complaint, the Defendant's motion papers, and the Plaintiff's opposition

papers, the Court finds that the complaint fails to state a municipal liability claim and,

therefore, will grant the Defendant's motion to dismiss the § 1983 claim.  Pursuant to 28 U.S.C.

§ 1367, the Court will decline to exercise supplemental jurisdiction over the negligence claim

and, thus, will dismiss the case.

**BACKGROUND**

The Plaintiff alleges that he was arrested in the District of Columbia in July 2011 and was

"transported to D.C. Jail as a detainee pended [sic] court proceedings."  Am. Compl. ¶ 6.  On

November 3, 2011, the Plaintiff injured his lower back and right hand when the double bunk

bed he attempted to climb separated from the wall and collapsed.  *Id*. ¶ 9.  The Plaintiff was

treated in the Jail's infirmary from November 3 to November 10, 2011, and each time was

returned to his "Unit."  *Id*. ¶¶ 10-11.

After falling twice on November 10, the Plaintiff, at a nurse's insistence, was placed in a

"Safe Cell" located in the infirmary that allegedly reeked of urine and spoiled food.  *Id*. ¶¶ 12-

14.  The Plaintiff alleges that he was held in the Safe Cell for five days "and only given one

shower despite numerous requests."  *Id*. ¶ 15.  The Plaintiff also alleges that while in the Safe

Cell, he was refused "a phone call and envelopes to contact [his] lawyer and family," and was

refused a clean cell because the "duty officer . . . told [] Plaintiff [that he] would not be in that

cell long."  *Id*.  The Plaintiff alleges that when his property was returned to him "two or three

days later," items were missing.  When he complained about the missing items, the duty officer

told him "that it will be logged in the log book." *Id*. ¶ 16.  On the morning of November 15, 2011, the Plaintiff was transferred to "C.C.A. Medical Unit for treatment." *Id*. ¶ 17.

The Plaintiff filed this action on May 3, 2012, from the Federal Correctional Institution in Butner, North Carolina.  He claims that the District breached its duty of "reasonable care and safekeeping owed to Plaintiff," *id*. ¶ 18, "knowingly, intentionally . . . ex-communicated" him from his family and attorney, in violation of the First Amendment, *id*. ¶ 20, and placed him "in a filthy, urine infested cell with reckless disregard for his health and safety . . . ." and maintained a "defective bunk bed," in violation of the Eighth Amendment.  *Id*. ¶¶ 19, 22.  The Plaintiff seeks a total of $360,000 in damages.  *Id*. at 4.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Instead, the complaint must plead facts that are more than " 'merely consistent with' a defendant's liability," *id*. (quoting *Twombly*, 550 U.S. at 557), and "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

In considering a motion to dismiss, the Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all

3

reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted). However, the court need not accept as true "a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S at 678 (internal quotation marks omitted), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to overcome a motion to dismiss. *Id*.

## DISCUSSION

Under 42 U.S.C. § 1983, it is unlawful for a person acting under color of law to deprive any other person of any federal constitutional or statutory right.  The Supreme Court has held that the term "person" in § 1983 includes municipalities and other local government units, such as the District of Columbia. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  A municipality, however, "cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691; *see also Connick v. Thompson*, --- U.S. ---, 131 S. Ct. 1350, 1359 (2011) ("under *§ 1983*, local governments are responsible only for "their *own* illegal acts…. They are not vicariously liable under *§ 1983* for their employees' actions."); *accord Jones v. Horne*, 634 F.3d 588, 600 (D.C. Cir. 2011).

In order to plead a § 1983 claim against a municipality, a plaintiff must not only allege a predicate violation of some right, privilege, or immunity secured by the Constitution and laws of the United States, *see* 42 U.S.C. § 1983, but must also allege "that the municipality's custom or policy caused the violation," *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992)), as evidenced by an official

policy or "practices so persistent and widespread as to practically have the force of law."

*Connick*, 131 S.Ct. at 1359; *see Jones*, 634 F.3d at 600-01 ("Causation can be shown in several

ways," including the adoption of an unconstitutional policy by "the municipality or one of its

policymakers[,]" a policymaker's knowing disregard of "a practice that was consistent enough

to constitute custom," or the municipality's deliberate indifference, *i.e.*, its failure to act on a

known risk of a constitutional violation.) (citations, internal quotation marks, and internal

alterations omitted).  "Where a plaintiff fails to allege the existence of any policy or custom that

could have arguably violated his rights, dismissal is proper."  *Gabriel v. CCA*, 211 F. Supp. 2d

132, 139 (D.D.C. 2002) (citing *Polk County v. Dodson*, 454 U.S. 312, 326-27 (1981)).  If a

predicate constitutional violation is not adequately pled, however, the Court "do[es]not reach

the second part of the inquiry, applying the standards for a claim of municipal liability."

*Hannon v. Transcor*, 161 Fed. Appx. 20 (D.C. Cir. 2005) (per curiam).

   A.   The First Amendment Claim

   The Plaintiff claims that he was "ex-communicated" from his family and attorney, Am.

Compl. ¶ 20, while in the Safe Cell because he was denied "a phone call and envelopes . . . ." *Id*.

¶ 15.  He adds in his opposition that the First Amendment "guarantees Freedom of speech,

mail, and telephone use," and that his requests to speak with his lawyer about "a sentencing

hearing coming up in a couple of days" and with his family "about medical condition and injury"

were "either denied or ignored."  Pl.'s Opp'n Mot. to Def.'s Mot. to Dismiss Am. Compl. ("Pl.'s

Opp'n") at 5 ¶ 2, ECF No. 20. [3]

---

[3]   A court must construe *pro se* filings liberally and, absent any indication of prejudice to the
defendant, should read all of the plaintiff's filings together.  *Richardson v. U.S.*, 193 F.3d 545,
548 (D.C. Cir. 1999).  Where necessary to present a complete picture of the Plaintiff's claims,

The fact that the Plaintiff was denied one telephone call and stationery for the brief time that he was in the Safe Cell fails to implicate the First Amendment's right of free speech or right to redress grievances. *See Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002) ("To maintain a court access claim, an inmate must demonstrate actual injury, that is, the inmate must show "that an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented . . . .") (citation and internal quotation marks omitted) (ellipses in original); *accord Akers v. Watts,* 740 F. Supp. 2d 83, 96 (D.D.C. 2010) (An inmate stating a First Amendment right of access to the courts must "allege that he suffered actual prejudice or injury" as a result of the government's deprivation.) (citations omitted); *Delaney v. District of Columbia*, 659 F. Supp. 2d 185, 196 (D.D.C. 2009) ("A claim for denial of access may be brought where (1) systemic official action frustrates a plaintiff in preparing and filing suits, such as denial of access to a law library or (2) official action precludes a claim resulting in the loss or inadequate settlement of a meritorious case or the loss of the opportunity to bring suit.") (citing *Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002)); *see also Hall v. Lanier*, 766 F. Supp. 2d 48, 53 (D.D.C. 2011) (finding free speech claim stated

---

the Court has considered together the facts asserted in the Second Amended Complaint and the Plaintiff's opposition. However, the Court has not treated the Plaintiff's opposition as amending the complaint to add the common law claim of Intentional Infliction of Emotional Distress ("IIED") that he raises for the first time in the opposition. Pl.'s Opp'n at 7 ¶ 6. Since the Plaintiff did not seek to amend the complaint to add this claim, the Court agrees with the Defendant that the IIED claim should be disregarded. Reply in Supp. of Def.'s Mot. to Dismiss Am. Compl., ECF No. 21, at 1. *See Jefferies v. D.C.*, No. 11-1159, 2013 U.S. Dist. LEXIS 1770 (D.D.C. Jan. 7, 2013)("Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion."); *Davis v. District of Columbia*, 800 F. Supp. 2d 28, 30 n.2 (D.D.C. 2011)(same); *Harris v. District of Columbia*, 696 F. Supp. 2d 123, 136 (D.D.C. 2010)(same). On the other hand, the Court disagrees with the Defendant's contention that the Plaintiff did not present a negligence claim, Def.'s Reply at 1, and it finds this position somewhat puzzling in light of the asserted defense based on the notice requirements of D.C. Code § 12-309, which could only apply to the common law claim. *See supra* n.1.

where MPD officers allegedly "chilled" or suppressed plaintiff's speech by threat of arrest).  The

Plaintiff's claim against the District predicated on the First Amendment therefore will be

dismissed.

    B.  <u>The Fifth and Eighth Amendment Claims</u>

    Since the Plaintiff alleges that he was at the D.C. Jail as a pretrial detainee, Am. Compl. ¶

6, the Eighth Amendment does not apply to his claim based on his conditions of confinement.

This is because the Eighth Amendment protects convicted prisoners from "cruel and unusual

punishment."  U.S. Const. amend. VIII; *City of Revere v. Mass. General Hosp.*  463 U.S. 239, 243-

244 (1983) ("Eighth Amendment scrutiny is appropriate only after the State has complied with

the constitutional guarantees traditionally associated with criminal prosecutions . . . . [T]he

State does not acquire the power to punish with which the Eighth Amendment is concerned

until after it has secured a formal adjudication of guilt in accordance with due process of law.")

(citation and internal quotation marks omitted) (alterations in original); *accord Powers-Bunce v.*

*District of Columbia*, 479 F. Supp. 2d 146, 152-53 (D.D.C. 2007) (observing "well-settled law

[that] the [Eighth] Amendment's prohibition applies only to persons who are subject to

'punishment' by the government").  Rather, the Plaintiff's claim is properly brought under the

Fifth Amendment's due process clause but analyzed in substantially the same manner as an

Eighth Amendment claim.  *See Powers-Bunce*, 479 F. Supp. 2d at 153 ("Courts have consistently

held that this right belonging to pretrial detainees is 'at least as great as' the analogous Eighth

Amendment right and, therefore, generally treat the two claims as analytically identical.")

(quoting *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992)).  Hence, the Court will grant

the Defendant's motion to dismiss the Eighth Amendment claim and will consider whether the underlying facts state a claim under the Fifth Amendment's due process clause.

In *Bell v. Wolfish*, the Supreme Court instructed that "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee."  441 U.S. 520, 535-36 (1979).  A condition may amount to punishment if it "is not reasonably related to a legitimate [institutional] goal - if it is arbitrary or purposeless . . . ."  *Id*. at 539.  But "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense . . . . And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible . . . during confinement does not convert the conditions . . . of detention into 'punishment' "  *Id*. at 537; *accord Jones*, 634 F.3d at 597-98.  The Fifth Amendment is implicated upon "a showing of an expressed intent to punish on the part of detention facility officials" or when the challenged detention is not "reasonably related to a legitimate governmental objective."  *Bell*, 441 U.S. at 538-39.

The Plaintiff alleges that for five days in the Safe Cell, he was exposed to "dried urine on the toilet seat and floor . . . Styrofoam trays with food in them and open milk cartons with [spoiled] milk in them," and was allowed one shower "despite [his] plea[s] for more showers." Pl.'s Opp'n at 6 ¶ 3.  The Plaintiff's allegations in the complaint establish that his placement in the infirmary's Safe Cell was not "motivated by the desire to punish [him]," *Jones*, 634 F.3d at 598, but rather by the nurse's desire to attend to the Plaintiff's ailments after his "legs or back gave out" twice on November 10, 2011.  Am. Compl.¶¶ 12-13.  In addition, the duty officer is

alleged to have refused the Plaintiff's request to have the cell cleaned for the non-punitive reason that "Plaintiff would not be in that cell long." Am. Compl. ¶ 15. Hence, the Court finds that the challenged conditions do not rise to the level of a Fifth Amendment violation. Even if they did, the Court finds for the reasons stated next that the Plaintiff has not pleaded a § 1983 claim against the District.

The Plaintiff alleges that "the District did not exercise appropriate oversight over D.C. Jail policies and training of guards," Am. Compl. ¶ 24, and that  [i]t has become 'custom' for D.C. Jail officials to not check or inspect cells before inmates are placed in them, [which] poses a dangerous situation because inmates can use defective or broken materials in cells as weapons." Pl.'s Opp'n at 5 ¶ 1. Not only is this alleged custom too nebulous to support a claim against the District but the alleged result of the custom is wholly disconnected to "the injuries of which [the Plaintiff] complained." *Gabriel*, 211 F. Supp. 2d at 140. Furthermore, the complaint does not allege that a policymaker was aware of the conditions in the Safe Cell and failed to act and, thus, "stops short of the line between possibility and plausibility of entitlement to relief" from the District. *Jones*, 634 F.3d at 601-02 (quoting *Iqbal*, 556 U.S. at 678). Hence, the Court will dismiss the municipal liability claim. *See Gabriel*, 211 F.Supp.2d at 140 (""[C]onclusory allegations by a plaintiff about the existence of a policy or custom will not satisfy the plaintiff's requirement to allege a prima facie case under § 1983.") (citations omitted).

**CONCLUSION**

For the foregoing reasons, the Court will grant the Defendants' motion to dismiss the Plaintiff's claims brought under 42 U.S.C. § 1983 and will dismiss the case.  The Court declines to exercise supplemental jurisdiction over the negligence claim, which presumably the Plaintiff may pursue in the District of Columbia courts.  A separate Order accompanies this Memorandum Opinion.

/s/ *Beryl A. Howell*

UNITED STATES DISTRICT JUDGE

DATE:  March 8, 2013